Mr. Farini. May it please the court, Joseph Farini on behalf of the insurers. In dividing time with co-appellant, I'm going to largely focus on the first Batista requirement and Mr. Doleve will focus on convention text aspects of the first Batista requirement and the fourth requirement. GE says that because they were a subcontractor on this project, they qualify as a party, but there were only two parties to these contracts and their arbitration clauses. This encrops Stainless USA and FL Industries. As noted in Wexler v. Soulmates, under the first Batista element, there must be an agreement, quote, to arbitrate the dispute at issue and that simply is not present here in this dispute with GE, a non-party to the contracts. Each mill contract states at the beginning and then on the signature page who the contract is by and between. This encrops USA and FL Industries. The contracts then define this encrops as buyer and FL Industries as seller. Immediately thereafter, the contracts then define the seller and buyer individually as party and collectively as parties. The common understanding of the word individual capacity such that seller and buyer alone are meant when the word party is used and together are meant when the word parties is used. Let me ask, what is the operative effect? Because the contract specifically states that when the seller is mentioned, it shall be understood as subcontractors included, except if expressly stated otherwise. So shouldn't the court interpret the two legal entities of buyer and seller, ThysenKrupp, now Otokampu, and FL Industries as FL Industries including the subcontractors, GE Energy? And that's why that language is important, Your Honor, because it is singling out the seller individually as party. So when the contract says expressly state otherwise, that's expressly stating otherwise. Hey, seller individually is party here. That's why that's important and it's also important because seller, that term is not used in the arbitration clauses. The term that's used in the arbitration clauses, of course, is parties. Arbitration clauses specify that only disputes between both parties go to arbitration. So that's where the singling out of seller individually is an as sellers including subcontractors. How could you have a claim for breach of professional design and construction and for breach of implied warranties without a contract between your client and GE? Well, that goes to the equitable estoppel argument. How could you possibly have the claims without a contract because the contractual relationship gives rise to the claims? Well, that would go to the argument below. No, it's not an argument. You believe in the proposition that to bring the suit or the claim under count two and the one under count three and you'll put them all together anyway. They're all one ball of wax. Without having a contract between the parties. Well, that would be a merits-based inquiry. No, no, no. That's an allegation you made and it has to come out of the contract. That's right. Well, and there is a contract here. Between GE and your client. No, the contract is. Well, then how can you sue somebody with whom you have no contract? Well, two things here. One, the proposition is that there is a consortial agreement under which they're supplying these motors. We understand that. How can you recover against GE without having a contract? Well, that's the theory of counsel is that when a manufacturer produces. No, you. There was a contract to design these motors. You agree? I do. And it was breached. And count two. There's a contract between your client and GE. That's what gave rise to the duty of care. That is not. There is no connection. First of all, there is no statement in the complaint that we're trying nor are we trying to invoke the mill contracts as a basis of that claim. If there's a statement in the complaint that alleges that a duty came out of somewhere and I'm asking you, where did it come from? If it doesn't come from a contract, then where did it come from? Well, and that would be something that they would raise in a motion to dismiss. No, no, no, no, no. You've got to answer the question now. Well, if it came from somewhere, it had to come from the consortial agreement because that was the. No, no, no. That was a duty to somebody else, not to you. Well, our our our position would be that that their duty, if it came from anywhere, would come from the consortial agreement because there was an agreement and they had an agreement for for your benefit. So you're the third party beneficiary somehow. Is that it? You either have to be the third party beneficiary or you had a straightaway contract with GE. Which was it? There was no straightaway contract with GE. Well, then you're a third party beneficiary. That would have to be the case. But so you had contract rights. And in order for GE to be liable for an implied warranty, they have to sell you something. That is not. That's as old as the law. They have to be liable for breach of implied warranty. They have to sell you something. If they didn't sell you anything, there's no implied warranty. And that goes to estoppel. And estoppel, it's clear. No, no estoppel. They have to sell you something to be liable for a breach of an implied warranty. I mean, it goes to your cause of action. Doesn't your warranty cause of action stem from the supply agreement? No, it does not. Are you are you telling us that somebody who doesn't sell something to somebody can be liable for a breach of implied warranty? The theory of counsel would be that. I don't know the theory of counsel. This is the law, period. Do you know of any principle of law which says that a seller is liable to somebody for breach of implied warranty, even though they didn't sell him anything? I'm not aware of that. It'd be silly, wouldn't it? But the point here is that that is the scope is dispositive in any case on that issue because they're raising that as part of an equitable estoppel argument. No, no, no. I'm looking at your complaint. It doesn't state a claim. I understand, Your Honor, that you're looking at the complaint. It states a claim for a breach of contract. But it is not relying on the mill contracts. It is not trying to assert the mill contracts. And the scope of this arbitration clause is so narrow that under either Alabama law or federal law, the scope would say you don't have to go arbitrate these claims because it's between both parties. So the scope here, even if it was related to the mill contracts, the scope of this arbitration clause would still demand that no arbitration proceed here because they are a foreigner to the arbitration clause. That's the law under Alabama or federal law, applying equitable estoppel and agency and the like principles. I see that I'm over time. I apologize, Your Honors. That's all right. You've saved a couple of minutes for rebuttal. If there are no further questions, I will. Thank you, Mr. Dolan. Yes, may it please the court. I am Devin Doleve here on behalf of Otocompo Stainless USA. And you've already heard from Mr. Frini on the insurers. What I would like to address today is. Well, the insurers stand in the shoes of your client. I don't disagree on that. They're all the same. Right, right. I don't disagree. Just a way of intro to saying I didn't want to repeat what Mr. Frini said because our analysis is the same on that. So that's where I was going. I wanted to talk briefly on the jurisdictional issues under the New York Convention. And basically, you know, the question of jurisdiction is there has for there to be federal jurisdiction to compel arbitration. The case would have to fall under the convention. Well, how does one determine if a case falls under the New York Convention? That's the only way this case is in federal court. And there are four prerequisites set forth in Batista, and it's the first and the fourth that are at issue. So you have to meet all four. The first requires an arbitration agreement in writing within the meaning of the convention. And, well, what does that mean? Well, Sarina, this court, it says you look to the language of the convention. And, you know, when you discuss equitable estoppel, when you discuss third-party beneficiary, when we discuss those things, GE Energy is overlooking the fact that the New York Convention is different from the ordinary federal arbitration act. Article two in the convention defines an agreement of writing as one signed by the parties or contained in exchange letters or telegram. But then paragraph three of that same article makes clear that the parties signing the arbitration agreement have to be the same parties in court. It says the court of a contracting state, when seized of an action with respect to which the parties have an agreement within the meaning of this article, shall at the request of one of the parties refer the parties to arbitration. So what that contemplates is that the parties to the arbitration agreement will also be the parties in court. Could a party sign the contract for the use and benefit of another party who didn't sign? Well, that actually, I believe, is... Could a principal sign for an agent? A principal could sign for an agent. At least that's what the Seger's Ball case held. Okay, let's suppose a principal signs, not for an agent in the classical sense, but for somebody who will have a contractual obligation to sign. Make sure I'm understanding the question here. So not an agent principal, but more of a third party beneficiary? No. They have a contractual obligation, let's say, to sign for this third party. To include the third party in the agreement. Okay, I'm following. So if that were the case and there's a contractual obligation, it's an interesting question then whether that third party could be bound by the contract. Yeah. But our position is, you know, don't need to get into third party beneficiary, don't need to get into equitable estoppel, don't need to get in that because you have a limited arbitration clause that's between both parties. And the example that got mentioned at argument in the court below before the magistrate judge was simply saying, if GE's interpretation is right, if someone messed up the drywall, some local drywall subcontractor could be pulled into arbitration in Germany. GE's responsibility to your client stems from the contract between your client and the IFA or whatever it was. I don't think I agree with that. And because that goes back to, if there is a failure, problem with the implied warranty claim on failure to state a claim, that goes to the merits. The argument here is the motors were defective. They were placed in the stream of commerce. They reached our mill, Otacompo's mill in Alabama, and they caused damage at that mill. And, you know, there's a contractual relationship between FL Industries and ThyssenKrupp and their limits to the warranties, and that's contractual. But the manufacturer of the motors, if you put nine motors— Well, FLI was basically the manufacturer. Pardon? They were basically the manufacturer because it was understood that somebody else was going to do the manufacturing for them so they could carry out their obligation to your client. And I guess in that sense, it goes back to, if a lawn care company buys a pickup truck, the lawn care company goes to the car dealer. They know the car dealer isn't making the pickup truck and that the motor may have come from one company and the truck may have been assembled somewhere else. And yes, in that sense. The other point, because I see I'm out of time, I did want to cover briefly the fourth Batista prerequisite, and that's simply you need a reasonable relation with a foreign state, and we don't see that on this record. Okay. Yeah, we understand your point. Okay. Thank you, Your Honor. Thank you. Good morning. May it please the Court. I want to start with what Judge Joflat said about the complaint. The complaint includes a claim for breach of contract. It may be a breach of implied warranty, but it is a claim for breach of contract. In count three, the plaintiffs allege that GE is a merchant in the sale of goods and is subject to Alabama's commercial code, including implied warranties of fitness and merchantability. The complaint specifically references Alabama Code sections 72314 and 72315. If you look at 314, which addresses the implied warranty of merchantability, it says a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. So the plaintiffs are necessarily arguing, not just arguing, they have alleged in their complaint that GE is a seller of goods, the motors that were covered by the sale in these sale contracts. There is no sale contract for the coal rolling mills, including the component motors, other than the contract that we have been sued under and that we are seeking arbitration under. So by contending in the complaint that we are a merchant and a seller of those motors and that a warranty was implied in the contract for their sale, they are necessarily alleging that we are a seller under the supply contracts that we are traveling under this morning. So you would agree that if ODK sought to enforce these supply agreements against GE Energy, it could under the terms of the supply agreement? It could. And it goes to your point, Judge Bloom. You pointed out the fact that section 1.2 of the supply contracts right there at the beginning say, you know, there are two parties, two defined parties, buyer and seller, but seller includes subcontractors unless it expressly states otherwise. So GE is a party to these contracts, can be sued for these contracts, and has been sued for these contracts in this very case. Ms. Ford, let me tell you, just speaking for myself, what I think is a potential vulnerability in your position, and you can tell me why I'm wrong and worrying about that. If we weren't under the convention, if we were just in a regular arbitration situation, it seems to me you'd have a powerful argument that even though your client, GE, did not sign anything, the agreement, everything is interrelated. It's necessary to decide the dispute, the claim under which the plaintiffs are asserting is necessary to rely on a contract. And so you would go to estoppel sorts of principles. You wouldn't worry so much your client didn't sign. We'd have to look to the contract. The contract includes an arbitration. There should be an arbitration. But we're not under that scheme. We're under the convention. And the convention says the term agreement in writing shall include an arbitral clause or an arbitration agreement signed by the parties. And your client didn't sign anything. And that means then arguably, and we'll hear what that is, that means arguably you have to reach back and go to an estoppel doctrine to have arbitration occur. But the only case I've found, and it was issued very recently, November 30th by the Ninth Circuit, the Yang case, held that estoppel principles do not apply under the convention. So that is my concern. Your client didn't sign anything. We're under the convention. Estoppel does not necessarily apply. How then do you gain arbitration with what I said? Thank you, Your Honor. I'd love to speak to that. First of all, as you know, the pivotal statutory language is under section 205 of the Convention Act. It says that when an arbitration agreement relates to an agreement falling under the convention. I'm not talking about jurisdiction. I'm assuming, I'm not keen on their jurisdictional argument. I'm talking about the actual merits of whether you get arbitration under the convention. Moving to that, the Yang case moved to the merits and said you don't have estoppel principles don't apply with the conventions applicable. Okay. First of all, I'd like to address what agreement and writing means under the convention, because I think sometimes these issues interrelate in a way that we should address that. First of all, if you look at article two, section one of the convention, it reads that each contracting state shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen and it goes on. But the recognition obligation is in article two, section one. And I think that we are, I think the treaty requires the United States to recognize an agreement in writing apart from whether there's a lawsuit or apart from whether who's the parties to the lawsuit. So then you look at article two, section two, which says what's an agreement in writing. And I think that really was what your question was geared to. Agreement in writing, if you look at the language itself, it says the agreement in writing shall include an arbitrable clause and a contractor of arbitration agreement signed by the parties and then or contained in exchange of letters or telegrams. Historically, the courts have treated the language include as an expansive term so that what comes after it is just an illustration of what's within the term. It's not limiting. Do they read out the phrase signed by the parties, these cases? You know, Your Honor, I haven't, it's odd to me. I haven't seen this argument raised in any of the case law. I know that in Bautista. Are you familiar with Yang? I know it just came out. I'm not, Your Honor. All right. Um, on the issue of equitable estoppel, I don't think that we need to get to equitable estoppel in order to have GE Energy be a party to the contract. But my problem is the signed with the parties part of that. So just tell me how I can eliminate that from my mind, that phrase. I think that what you're asking, I hope I am getting this right, is that your concern is that the convention restricts what arbitration agreements can be enforced? I'm saying the convention says the agreement in writing is an agreement signed by the parties. Your client didn't sign it. Tell me why that shouldn't bother me. Well, for two reasons. First of all, because of the includes language I just mentioned, I don't, I don't think, although I haven't seen it addressed in the case law, that an agreement in writing signed by the parties is dispositive of that issue. But here we have an agreement signed by the parties. It is not the parties before the court. But Article 2, Section 1 doesn't say it has to be, or Article 2, Section 2 doesn't say it has to be the parties before the court. This was signed by FLI as our agent. But didn't you sign the contract with the General? You're the sub with the General. Yes, sir. Yes, ma'am. After the General had signed the contract with the plaintiff. So they were your agent before you even had a relationship with them? Well, actually, Your Honor, what happened is that even before the contract, the supply contracts were signed, FLI, the General, GE Energy, the sub, and TK Stainless at the time, OTK, met in Germany to talk about this contract. So before anything is signed. But I'm right, though, am I not, that your contractual agreement with the General occurred after the General's contractual agreement was consummated with the plaintiff, is that correct? Was executed after. If you read the consortial agreement, it reads as if it predates the supply contracts. For example, it says we're assuming the obligations under the contract. Please, you know, it says it authorizes FLI to sign the contract. It says we're going to submit a joint bid for the contract. So if you read the consortial agreement, it reads as if it predates the supply contracts. But I will agree with you, it was not executed until a month later. Let me ask you, maybe this will make it simpler. Let's say the shoe is on the other foot. In this case, you want arbitration. Let's say another scenario, you don't want arbitration. And the plaintiff wants arbitration. And the plaintiff says, we want to arbitrate this claim against your client, the sub, GE. Would that be required, arbitration, since you signed nowhere in any agreement here that had any arbitration clause with them? Your Honor, it would be required. And there's a reason for that. Because whether or not, at the time FLI signed the supply agreements, whether or not it was then, at that moment, acting as our agent, within a month after that, GE Energy signed a contract in which it said, we are binding ourselves to the supply agreements. I believe the clause said that if the general wants to bring you into a dispute, the general can. But I don't know that that said that if the plaintiff building the mills wanted to bring you in, they would be able to do that. I think by executing the consortial agreement, Your Honor, we are bound by the entirety of the supply contracts. Counsel, let me ask you a question, if I may interrupt. Yes, sir. Is there any contract between the plaintiff and GE? Yes. What contract? The supply contracts. No, no, no. The contract was, GE gave FLI an agreement. Yes, sir. It didn't contract with the plaintiff. I believe that it did. The general contractor contracted with the plaintiff. And it had an obligation to deliver these motors. Yes, sir. So whatever fault or whatever the case may be, the plaintiff has the rights against the general contractor. It doesn't have a contractual obligation, GE, to the plaintiff. In the normal parlance, what would happen is that the plaintiff would sue FLI or the general contractor, and the general contractor would implede the sub. Because sub has an obligation to the general contractor, not to the other side, not to the plaintiff. In this instance... So if I were the district, I'll tell you what I would have done with this case if I were the trial judge. I would have dismissed the claims against GE because there's no agreement between the plaintiff and GE. And then I would invite the plaintiff to now sue the general contractor. And once the plaintiff sued the general contractor, the arbitration clause is triggered, and that's the end of it. Your Honor, I believe there is a contract between GE Energy... Where's the writing? I think the writing is coupled between... The contract signed by the plaintiff and by GE, where they had mutual obligations. Where is it? There is not a contract that is signed by GE and by the plaintiff. That's my point. The plaintiff was looking to FLI to provide a competent subcontractor. For itself. To carry out its obligation to the plaintiff. Yes, it was. And it picked GE, which was acceptable. Well, GE... Or GE's predecessor. Same thing. Same company. GE was one of the list of... Right. That's right. There isn't any agreement between the plaintiff and GE. Yes, Your Honor, there is. Okay. You can't tell me where it is. Yes, sir, I can. The supply contracts say... Are you arguing that GE and the supply contract with the general entered into a contract for the benefit of the plaintiff as a third-party beneficiary? I am, but I also believe that when GE Energy executed the consortial agreement, it agreed to be bound by the supply contracts. That's an interesting point of contract law that I've never seen. Well, Your Honor... Every subcontractor working for a general contractor enters into an agreement with the general contractor for the benefit of the owner, as it were. Well, not if they don't actually agree. In this instance, GE Energy executed the... No, no. The agreement would be that the plaintiff said to FLI, we'll make an agreement with you. You tie it in with a subcontractor, and your agreement will be... That agreement will create a third-party beneficiary arrangement for the plaintiff, so we can sue the sub. Without that, you can't sue the sub. In this instance, Your Honor, I think because the supply agreements say that it covers subcontractors, and then you couple that with the consortial agreement where GE Energy said, we are assuming the full responsibility for the fulfillment of our obligations... That's fine. That's an obligation to the general, not to the plaintiff. So under what contract does GE's duty to provide good motors arise from? Is it the supply agreement, or is it the consortial agreement? It is the supply agreements, which GE Energy adopted by executing the consortial agreements and directing the execution of the supply contracts by FLI. I've been trying to throw you a softball. You know what it is? Well, try again, Judge. No, no, I'm being serious. I'm trying to throw you a softball. If there is no cause of action against GE, because it doesn't have a contractual relationship with the plaintiff, then the plaintiff has got to sue the general. And that puts it in which case they'll implead GE, in which case it'll be arbitrated. Pure and simple. And what ultimately is, you might not get arbitration at this juncture, but you might have your case dismissed. Well, that would be up to the district court, and I would suspect the plaintiffs would say they have a negligence claim against us. They can't have a negligence claim without a contract, which gives rise to the duty of care. If you don't have a contract, you don't have a duty of care. In the construction world, you don't have a duty of care. This is Hornbook law. Without an agreement, they make a contract to design this thing for the plaintiff. They have an agreement with the plaintiff. That gives rise to the duty of care. Without that contract, there isn't any duty. Just like without a contract to sell them the goods, there could be no breach of an implied contract. But anyway, if you want to go ahead and confess that there's a contract, you can do that downstairs. Your Honor, my time is up. May I just briefly respond? Going back to what we started with, in the complaint in this action, these plaintiffs are alleging that they have a contract. I know that, and it's subject to dismissal is all I'm trying to tell you. Thank you. Mr. Frini, you have a moment. You're in the same shoes as your insureds. Yes, Your Honor. A couple of quick points. Opposing counsel did not raise agency below, and it's telling. They submitted an affidavit below of Mr. Verdeer, and in that affidavit, he doesn't say, oh, they were acting as our agent in this matter. What he says is that the contracts were between the Syncrop and FL Industries, and he says that they supplied the motors pursuant to the consortial agreement. So that's the... That's fine. That doesn't make them an obligee of the... Obligated to the plaintiff. I'm just responding there to their efforts at agency, and under a direct reading of the convention, the convention says that the court of a contracting state, when seized of an action in respect of which the parties have made an agreement with the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration. And we would submit that right there in black and white. It's very clear that the parties in the convention language are the parties coming into court. We understand your point. Okay. And one further point is that the scope of this clause is controlling on any... As an additional ground on any equitable estoppel or third-party beneficiary under Jenkins, the first thing you look... Are you conceding then? Because I had thought, you know, an argument could be made, estoppel doesn't apply under the convention based on the Ninth Circuit case, but you're conceding here estoppel does apply. No, no, Your Honor. We agree with you on that point, but there are multiple reasons why this would be defeated. First is the Ninth Circuit case. Second is simply under Alabama law, you wouldn't be able to go there anyway, because the first thing Alabama law says is, wait a second, what's the scope of this arbitration clause? Oh, it's only these two parties? Sorry, equitable estoppel isn't allowed here. Third-party beneficiary isn't allowed here. So that's our point, is that even if you got past the Ninth Circuit case, they would still have an insurmountable roadblock. The part that bothered me, the signed by the parties, you haven't mentioned. So maybe my concern is not a real concern. You don't think this part of the article, too, that says the agreement in writing must be signed by the parties and GE didn't sign that. You don't think that's a big problem? I don't mean to waive anything. We argue in our brief that signed by the parties is critical. And the shall include, shall is must. So it must include either an agreement in writing. It must include either something signed by the parties or an exchange of letters, which doesn't apply here. So actually, no, we're not meaning to concede anything that we set forth in our papers on that point. And finally, it's to Judge Joe Flatt's point that he has made that there does not seem to be a contract between GE and the plaintiff. I just want to make sure I understand your argument. Your position is even if the district court were to dismiss your contractual claims for the reasons we've discussed, there is still a claim out there, you think, that does not depend on the existence of a contract between GE and the plaintiff? Correct. And if you could just succinctly tell me what that is again. There, I think, are a couple of theories. One, there's a lawsuit for negligence. And then another, the idea that when they produced this product, this multimillion dollar product that was supposed to last for 20 years, and it failed within a year, that there was a warranty that attached to that product as it entered into the stream of commerce. And that when it made its way to the mills and it failed, that they should be on the hook. Even if you had never met them, heard of them, whatever, you just go to a store somewhere and buy their motor, that you didn't have a contract with them, so to speak. That would be your claim. Yes, Your Honor. I see my time is up. I will defer to Mr. Dooley. Thank you. Thank you. Again, I think the issue that comes down to in this case is whatever the broad relates to language in order to compel arbitration, there has to be an agreement falling under the convention. And I think it's been covered. But we do submit that signed by the parties means signed by the party compelling arbitration. The arguments that was, Serena says look to the convention. You have the Royal Caribbean case, Rolls-Royce v. Royal Caribbean out of the Southern District of Florida. There's been some disagreement on that. We acknowledge that. But the argument that somehow signed by the parties doesn't mean signed by the parties was addressed by the Second Circuit in Con Lucas. It rejected the Fifth Circuit interpretation and Serena follows the Con Lucas interpretation. So just as that matter of law, if it's not signed by the parties, it doesn't fall under the convention. And this, I think, is the issue with GE Energy's overreach. They don't just say this relates. Pardon? Are the parties diverse? Pardon? Are the parties diverse? In this case, I believe so, yes. Well, then the court has... No, wait, no, wait. No, they're not diverse because it's... Sorry. That's what I'm saying. Otokonpu... That's right. Otokonpu is diverse from GE Energy. But then you have foreign insurers and that was procedurally how this case originally moved to dismiss those. Aren't they diverse with them? Pardon? Aren't they diverse with them? It goes back to alienation... The insurance companies are nothing but suborgies. Right. And originally... The controversy is between two diverse parties, is it not? The original controversy... Yes, GE Energy made that argument below and then abandoned it. The insurance companies simply have a lid, have part of your cause of action, that's all. Well, the two companies involved now are European parent companies. The two companies we're talking about right now, are you American companies? Yes. Otokonpu Stainless USA LLC is an American company. Its parent company is Otokonpu Americas Inc. That's a corporation, sole member of the LLC. So you'd have to jump up the chain to get to foreign parentage and you stopped with the Inc. What do you say the citizenship of these two companies? So GE Energy is French and Otokonpu is Delaware and Alabama. So that would be diverse. And that... But that was an issue brief below. GE Energy originally argued that there was fraudulent joinder of the insurers  And then GE Energy changed tact after losing that argument and affirmatively sought to compel the insurers also to arbitration. So that was something that went through the record. They're just subrogies, that's all. Pardon? They're nothing but subrogies. They don't even need to be in the lawsuit. You agree? Pardon? They're just subrogies. They don't have to be in the lawsuit. If you really want to get into detail why we're separate parties, it goes back to what part of the claim was paid in those examples. But that's probably... I think we understand. Yes. Okay. So anyway, the point I just wanted to make on rebuttal was that you need the falling under and you don't have it either because you don't have the signed agreement and then you get this reasonable relation and the parties to this agreement are two American entities. That is the contract for the mills. Thank you, Your Honor. We'll go to the last case. Okay. White v. Sacred Heart.